## PYRAMID MOTOR FREIGHT CORP. *v.* ISPASS ET AL.

No. 41.   Argued October 22, 1946.—Decided March 31, 1947.

696

*Charles E. Cotterill* argued the cause and filed a brief for petitioner.

*Deane Ramey* argued the cause and filed a brief for respondents.

MR. JUSTICE BURTON delivered the opinion of the Court.

This case presents two issues:

I. Was it reversible error for the Circuit Court of Appeals to deny petitioner's motion to dismiss the appeal, made on the ground that the appeal had not been docketed and the transcript of record had not been filed within the time specified in Rule 73 (g) of the Federal Rules of Civil Procedure? We hold that it was not.

II. Under the principles we have stated in the companion case of *Levinson* v. *Spector Motor Service,* 330 U. S. 649, was the Circuit Court of Appeals justified in remanding the present case to the District Court for entry of a judgment under the Fair Labor Standards Act, in

favor of all of the respondents except Shapiro? We hold
that the case should be remanded, but with directions
to proceed in accordance with the opinion of this Court
in this case and the *Levinson* case. This will include
a direction to the District Court to determine whether
or not the activities of each respondent consisted, wholly
or in substantial part, of the class of work which is
defined by the Interstate Commerce Commission in
*Ex parte No. MC–2*, 28 M. C. C. 125, 133–134, as that
of a "loader" of freight for an interstate common carrier
by motor vehicle, and as affecting the safety of operation
of motor vehicles in interstate or foreign commerce.[1]

This action was begun in 1942 in the City Court of the
City of New York, pursuant to § 16 (b) of the Fair Labor
Standards Act.[2] It sought to recover unpaid overtime
compensation for services rendered to the petitioner by
each of six of the eight respondents as "a delivery clerk
and 'push-boy'," during various periods between October
24, 1938, and September 20, 1941, computed in accord-
ance with § 7 of the Fair Labor Standards Act,[3] together
with interest, liquidated damages and an attorney's fee.
The case was removed by the petitioner to the United
States District Court for the Southern District of New
York. The other two respondents there joined in the
complaint on like grounds. The petitioner answered that
it was an interstate common carrier of freight by motor
vehicle; that the labor performed by each of the respond-
ents "consisted primarily of that of [a] driver's helper and
of [a] loader;" that, with respect to them, the Interstate
Commerce Commission had power to establish qualifi-
cations and maximum hours of service pursuant to § 204
of the Motor Carrier Act, 1935, and that, by virtue of

---

[1] See *Levinson* v. *Spector Motor Service, ante,* p. 652, note 2.

[2] See *Levinson* v. *Spector Motor Service, ante,* p. 653, note 6.

[3] See *Levinson* v. *Spector Motor Service, ante,* p. 653, note 5.

§ 13 (b) (1) of the Fair Labor Standards Act,[4] § 7 of that Act did not apply to the services of the respondents. The case was submitted to the court upon an agreed statement of facts.[5]

On November 29, 1943, the District Court rendered an opinion in which it declined to determine the status of

[4] See *Levinson* v. *Spector Motor Service, ante,* p. 653, note 4.

[5] This included the following description of the work of the respondents as employees of the petitioner:

"Item 3. As to northbound freight the loaded vehicles would come into New York in the very early morning hours to the West 11th Street Terminal where new drivers took charge of the vehicles, and what were called downtown helpers rode on the vehicles with the drivers to the 38th Street Terminal. At such terminal the doors of the trucks were opened in the mornings, both the driver and downtown helper remaining on the vehicles. *As the downtown helper pushed the freight packages over the tailboards they were received by the plaintiffs [respondents], who then placed the freight packages in the sub-terminal building. Still later in the mornings the plaintiffs [respondents] then delivered the packages to various consignees in the Garment Center, generally using for that purpose what are called hand-trucks or flat trucks, using their own manpower for propulsion.*

"During those same days other northbound trucks after first stopping at the West 11th Street main terminal to change a driver and receive a downtown helper, by-passed the West 38th Street sub-terminal and parked first at one place and then another alongside the curbs in the Garment Center. *At those places the unloading operation was performed in the same way as at the sub-terminal hereinabove described, and the plaintiffs [respondents] then made the deliveries by hand or by hand trucks into the insides of the Garment Center buildings.*

"Item 4. In the late afternoons and early evenings freight originating with various consignors at various locations in the Garment Center was 'picked up' for intended delivery the next morning in Philadelphia or elsewhere south of New York. As to these southbound operations the facts were these: *Some of the freight packages would be picked up by the plaintiffs [respondents] at the consignor's places of business in the Garment Center and hand-trucked by them to the West 38th Street sub-terminal. At that place the plaintiffs [respondents] themselves did, in due course, physically load the freight packages into a waiting truck which, when loaded, took up*

the respondents but held the case "open for further action" in order to give the respondents an opportunity to present that question to the Interstate Commerce Commission. 54 F. Supp. 565, 569. Pursuant to respondents' statement that they would not so apply to the Commission and pursuant to their motion requesting a final disposition of the case, the court, on February 14, 1945, dismissed the complaint "without prejudice." [6] 59 F. Supp. 341. After considerable delay in the filing of the record on

---

*this journey first to the West 11th Street main terminal, and then with a new driver went on to the destinations south of New York. A downtown employee other than the plaintiffs [respondents] would also at the same time so load the vehicles.*

"Other trucks for southbound loadings took their stations on the public streets in the Garment Center where the plaintiffs [respondents] brought the packages by hand or by hand truck. The part which the plaintiffs [respondents] took in such loading consisted of the lifting of the packages on to the tailboards of the trucks, and very often when the weights or size of the packages so required they would stand inside the truck bodies and, together with the downtown employee, stack and pile the freight in the vehicle.*

"Item 5. As to all the plaintiffs [respondents] other than Shapiro they generally walked between stopping points but occasionally rode upon the trucks when the trucks moved from one place to another in the Garment Center, thereby avoiding loss of time by walking. As to the plaintiff Shapiro, he regularly and as a matter of fixed duty, between August 1939 and September 1, 1941, rode on the truck between four and five hours daily. On the truck at the same time was the driver and a helper from the downtown terminal. In addition thereto the plaintiff Shapiro devoted three and a half hours each day to inside office work at the 38th Street sub-terminal." (Italics supplied.)

[6] The order of dismissal appearing in the record was as follows:

"Ordered that the complaint be and the same hereby is dismissed and that judgment be entered abating and dismissing said action, without prejudice to the rights of plaintiffs [respondents], or any one of them, to bring other actions or proceedings for the establishment of their respective claims, either administratively or at an appropriate time, by action in this court or other proper tribunal."

appeal, the Circuit Court of Appeals for the Second Circuit affirmed the judgment of dismissal as to the respondent Shapiro on the ground that "he is a 'helper' within the Commission's ruling in 28 M. C. C. at pages 135, 136." 152 F. 2d 619, 622. As to the other respondents, it reversed the judgment with costs and remanded the cause "for entry of judgment in their favor and for allowance of an attorney's fee." *Id.* at 622. The judgment as to Shapiro has not been questioned and is not before us.

Because of its importance in the interpretation of the Motor Carrier Act and the Fair Labor Standards Act, we granted certiorari, 327 U. S. 774, and the case was argued immediately following the *Levinson* case. A brief on behalf of the Administrator of the Wage and Hour Division, United States Department of Labor, as *amicus curiae,* was filed jointly in this case and in the *Levinson* case, supporting the position of the respondents.[7]

---

[7] See also, *Walling* v. *Comet Carriers,* 57 F. Supp. 1018, 151 F. 2d 107, 109; cert. granted, 326 U. S. 716; writ of certiorari dismissed on motion of counsel for petitioner Comet Carriers, 328 U. S. 819. That case, also in the Second Circuit, related to "four motor truck drivers, four drivers' helpers and two hand truckers or pushers" employed by Comet Carriers in the transportation of goods between manufacturers and contractors mostly on intrastate trips within or near the New York City Garment Center. As to the hand truckers or pushers, the District Court said: "they are not employed on motor vehicles nor do their functions as employees affect or relate to the safety of operation of the motor vehicles in interstate commerce." 57 F. Supp. 1018, 1023. The Circuit Court of Appeals discussed only the drivers and drivers' helpers. As to them it said:

"Proof that two employees worked only three hours a week in interstate transportation and that two employees made 'some' and 'occasional' deliveries to the warehouses of chain stores and worked the remaining time in the production of goods for commerce does not satisfy the requirement that the amount of time during which they are engaged in interstate commerce be substantial." 151 F. 2d 107, 111.

## I.

Notice of appeal, dated March 29, 1945, was filed by the respondents in the District Court April 2, 1945. In spite of the applicable provisions of Rule 73 (g) of the Federal Rules of Civil Procedure,[8] respondents sought from the District Court no extension of time within which to docket their appeal or file a transcript of the record. On July 20, 1945, more than 90 days from the date of the first notice of appeal, respondents, pursuant to motion supported by affidavit, secured from Circuit Judge Augustus N. Hand an order extending to September 1, 1945, the time within which to serve and file their record on appeal. On that date, the transcript of record was filed. The petitioner promptly moved to dismiss the appeal under Rule 73 (a) of the Federal Rules of Civil Procedure,[9] questioning especially the right of a single member

---

[8] "RULE 73. APPEAL TO A CIRCUIT COURT OF APPEALS.

. . . . .

"(g) DOCKETING AND RECORD ON APPEAL. The record on appeal as provided for in Rules 75 and 76 shall be filed with the appellate court and the action there docketed within 40 days from the date of the notice of appeal; except that, when more than one appeal is taken from the same judgment to the same appellate court, the district court may prescribe the time for filing and docketing, which in no event shall be less than 40 days from the date of the first notice of appeal. In all cases the district court in its discretion and with or without motion or notice may extend the time for filing the record on appeal and docketing the action, if its order for extension is made before the expiration of the period for filing and docketing as originally prescribed or as extended by a previous order; but the district court shall not extend the time to a day more than 90 days from the date of the first notice of appeal." 308 U. S. 752, 28 U. S. C. following § 723 (c).

[9] "RULE 73. APPEAL TO A CIRCUIT COURT OF APPEALS.

"(a) How TAKEN. When an appeal is permitted by law from a district court to a circuit court of appeals and within the time prescribed, a party may appeal from a judgment by filing with the district court a notice of appeal. Failure of the appellant to take any

of that court to make the order of July 20. This motion was denied October 10, 1945, Circuit Judges Learned Hand, Swan and Clark speaking for the court. The motion was renewed at the hearing on the merits of the appeal and, on December 28, 1945, was denied again, Circuit Judges Learned Hand, Swan and Frank speaking for the court. 152 F. 2d 619. The issue was raised properly and fully presented here.

The authority of a Judge of the Circuit Court of Appeals for the Second Circuit to extend the time for filing the record on appeal appears to be supported by Rule 15 of that court.[10] That Rule, however, was not discussed

of the further steps to secure the review of the judgment appealed from does not affect the validity of the appeal, but is ground only for such remedies as are specified in this rule or, when no remedy is specified, for such action as the appellate court deems appropriate, which may include dismissal of the appeal." 308 U. S. 749, 28 U. S. C. following § 723 (c).

[10] Rule 15, U. S. C. C. A., Second Circuit.

"DOCKETING CASES.

"1. In an appeal in a civil action the appellant shall docket the action and file the record in this court within forty days after filing the notice of appeal with the District Court, or within any added time granted by the district judge within forty days after the filing of the notice of appeal, but in no case later than ninety days after such filing (Rule 73 [g]). . . . *If the record is not presented to the clerk for filing within the periods above provided, he shall refuse to accept it unless this court so orders, or a judge thereof if the court is not sitting.*

"2. This Court will not hear and grant motions for filing and docketing appeals, otherwise properly taken, at times other than as stated in subdivision 1 hereof, except upon a showing by affidavits, or otherwise as the Court may order, (a) that the delay has been due to cause beyond the control of the moving party or (b) that the delay has been due to circumstances which shall be deemed to be merely excusable neglect on the part of the moving party and there is a substantial question to be presented on appeal and (c) in all cases where the district court has power to act, that an extension of time has been denied

by counsel and we sustain the action taken by the Circuit Court of Appeals under authority of Rule 73 (a), even without reference to its own Rule 15.

The principal argument against the final action of the Circuit Court of Appeals on this motion is based upon the following statement in that court's opinion: "In the case at bar there was no abuse of discretion in extending the time, *despite the somewhat feeble excuses for delay, since the appeal presents a substantial question as to the correctness of the judgment."* (Italics supplied.) 152 F. 2d 619, 621. It is urged that this shows that the court based its refusal to dismiss the appeal on the substantiality of the question to be presented on the merits of the appeal, rather than on the substantiality of the excuses for the delay in filing the record.

We interpret the statement as no more than a recognition by the court that the substantiality of the question to be at issue on the merits of the appeal was a matter appropriate for its consideration under Rule 73 (a), in connection with all the other circumstances before it. Rule 73 (a) is intended to place reliance upon the sound discretion of the Circuit Court of Appeals. We see no

by that court, together with the grounds for such denial, if any are stated.

"3. If the appellant shall have failed to comply with this rule, any appellee may either docket the action and file the record in this Court, in which event it shall stand for argument, or may have the action docketed and dismissed by the Clerk of this Court upon producing a certificate from the Clerk of the Court wherein the judgment or decree was rendered, certifying that such appeal has been duly taken or allowed, and proof that four days' notice in writing has been served on the appellant or his attorney that application will be made to the Clerk of this Court for such dismissal. No action dismissed under this rule shall be reinstated except in the discretion of the Court and upon a showing similar to that required under subdivision 2 hereof." (Italics supplied.) 11 U. S. Sup. Ct. Rep. Digest, L. Ed., Supp. No. 4, p. 55.

reason to question the discretion exercised in this case as evidenced by the agreement of all of the five Circuit Judges to whom the issue was presented. *Ainsworth* v. *Gill Glass & Fixture Co.*, 104 F. 2d 83; *Mutual Benefit Health & Accident Assn.* v. *Snyder,* 109 F. 2d 469; *Burke* v. *Canfield,* 72 App. D. C. 127, 111 F. 2d 526; *United States* v. *Gallagher,* 151 F. 2d 556.

Accordingly, we sustain the denial of the motion to dismiss the appeal under Rule 73 (a).

## II.

On the merits, the question is whether or not the Circuit Court of Appeals was justified in remanding this case with instructions to enter a judgment under the Fair Labor Standards Act in favor of all of the respondents except Shapiro. We hold that the cause should be remanded but that the order of remand should be modified. This case was tried, without a jury, entirely upon an agreed statement of facts and a pre-trial agreement between the parties, approved by the District Court, settling the issues to be determined. For the sake of clarity, we have proceeded on the same basis and have treated the case as though, upon remand of it to the District Court, that court will proceed upon the same record. This, however, should not be interpreted as necessarily restricting that court to that record if, for good cause, that court should find it advisable to retry the case *de novo.*[11]

---

[11] The District Court, in its order of February 14, 1945, described the basis on which the case had been tried as follows:

". . . on the 3rd day of May, 1943, and the parties hereto having duly appeared by their respective attorneys, and submitted to the Court, in lieu of the offering of proof, an agreed statement of facts setting forth the issues framed by the complaint, and the Court, upon the consent of the attorneys for the respective parties, having thereupon made and entered an order herein on the said 3rd day of May, 1943, wherein and whereby the said agreed statement of facts which

Under the agreed statement there was no question but that the Fair Labor Standards Act applied to each respondent provided only that he was not found to have been excluded from the overtime pay requirements of that Act by § 13 (b) (1) because of being an "employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935; . . . ." 52 Stat. 1068, 29 U. S. C. § 213 (b) (1). There thus will remain to be determined by the District Court the question whether the activities of the respective respondents consisted, either wholly or in substantial part, of the class of work which is defined by the Interstate Commerce Commission in *Ex parte No. MC–2,* 28 M. C. C. 125, 133–134, as that of a "loader," and as affecting the safety of operation of motor vehicles in interstate or foreign commerce.[12]

It will remain for the District Court to apply the facts found by it as to the activities of the respective respondents to the classifications of work that have been made by the Interstate Commerce Commission, defining what comes within the jurisdiction of the Commission under § 204 of the Motor Carrier Act. The Commission has defined its jurisdiction, both affirmatively and negatively, as follows:

". . . we have power, under section 204 (a) of said part II, to establish qualifications and maximum hours of service for the classes of employees covered by findings of fact numbered 1, 2, and 3 above [me-

---

were submitted by the attorneys for the respective parties, as aforesaid, was set forth as the issues framed by the complaint and answer, and the said action having been submitted to the Court for its determination upon the said agreed statement of facts and order hereinbefore mentioned and referred to, . . . ."

[12] See *Levinson* v. *Spector Motor Service, ante,* p. 652, note 2.

chanics, loaders and helpers], and . . . we have no such power over any other classes of employees, except drivers." *Ex parte No. MC-2,* 28 M. C. C. 125, 139.[13]

Under these circumstances, there is no occasion for us to refer to the Commission any question presented in this case nor to suspend the long-delayed final judgment pending further findings by the Commission. The Commission has done its work. The District Court must determine simply whether or not the respective employees who seek to recover overtime compensation under § 7 are excluded from the benefits of that Section because they are within the above classification. The special knowledge and experience required to determine what classifications of work affect safety of operation of interstate motor carriers have been applied by the Commission. Whether or not an individual employee is within any such classification is to be determined by judicial process.

The District Court, in applying § 204 of the Motor Carrier Act to respondents, will determine whether or not the activities of each respondent, either as a whole or in substantial part, come within the Commission's definition of the work of a "loader." In determining whether the activities, or any substantial part of the activities, of an individual come within those of such a "loader," the District Court shall not be concluded by the name which may have been given to his position or to the work that he does, nor shall the District Court be required to find that any specific part of his time in any given week must have been spent in those activities. The District Court shall give particular attention to whether or not

---

[13] The findings of fact referred to by the Commission, insofar as they relate to loaders, are those quoted in the text of *Levinson* v. *Spector Motor Service, ante,* p. 669, at note 17.

the activities of the respective respondents included that kind of "loading" which is held by the Commission to affect safety of operation. In contrast to the loading activities in the *Levinson* case, the mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual or occasional a part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of "loading" which is described by the Commission and which, in its opinion, affects safety of operation. See also, *McKeown* v. *Southern California Freight Forwarders,* 49 F. Supp. 543. Except insofar as the Commission has found that the activities of drivers, mechanics, loaders and helpers, as defined by it, affect safety of operation, it has disclaimed its power to establish qualifications or maximum hours of service under § 204 of the Motor Carrier Act.

If none of the alleged "loading" activities of the respective respondents, during the periods at issue, come within the kind of activities which, according to the Commission, affect the safety of operation of motor vehicles in interstate or foreign commerce within the meaning of the Motor Carrier Act, then those respondents of which that is true are entitled to the benefits of § 7 of the Fair Labor Standards Act. On the other hand, if the whole or a substantial part of such alleged "loading" activities of the respective respondents, during the periods at issue, does come within the kind of activities which, according to the Commission, affect such safety of operation, then those respondents who were engaged in such activities are excluded from the benefits of such § 7. If some, but less than a substantial part, of such activities of the respective respondents, during some or all of the periods at issue, come within the kind of activities which, according to the Commission, affect such safety of opera-

tion, then the right of those respondents who were engaged in such activities to receive the benefits of § 7 of the Fair Labor Standards Act does not come within the precise issue determined in the *Levinson* case and this Court reserves its decision as to the power of the Commission to establish qualifications and maximum hours of service with respect to them and, consequently, reserves its decision as to their right to receive the benefits of § 7 of the Fair Labor Standards Act.

For these reasons, the judgment of the Circuit Court of Appeals is vacated insofar as it relates to the respondents other than Shapiro, and the cause is remanded to the District Court for further proceedings consistent with this opinion.

*It is so ordered.*