FLETCHER et al. v. GRINNELL BROS.

No. 3587.

District Court, E. D. Michigan, S. D.

June 2, 1948.

See also 62 F.Supp. 258, and 64 F.Supp. 778; 150 F.2d 337.

Robert F. Robbins, of Detroit, Mich., and Maurice Sharai, of Highland Park, Mich., for plaintiffs.

Fisher, Brown, Sprague, Franklin & Ford, of Detroit, Mich., for defendant.

LEDERLE, District Judge.

### Findings of Fact

1. This action was brought by sixteen plaintiffs, who are or were warehouse and garage employees of defendant, Grinnell Brothers, a Michigan corporation engaged

in the furniture and musical equipment business, wherein plaintiffs claim unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. At the close of plaintiffs' evidence, a motion to dismiss was made by defendant. Judgment for defendant on this motion was entered July 11, 1944, pursuant to findings of fact and conclusions of law reported in 62 F.Supp. 258. The sole determination in such decision was that plaintiffs were employed in defendant's retail establishment, the greater part of whose selling was in intrastate commerce, and were, therefore, excluded from coverage of the Act under the retail establishment exemption contained in 29 U.S.C.A. § 213(a) (2).

2. Defendant had also relied upon 29 U.S.C.A. § 213(b) (1), as exempting plaintiffs from benefits of the Act under the so-called Interstate Commerce Commission exemption, and pending a motion to amend its answer so as to plead that plaintiff Hoolihan also came within the executive and administrative exemption contained in 29 U.S.C.A. § 213(a) (1). No determination was made of these latter two defenses because they were immaterial in view of the decision for defendant on the retail establishment exemption theory.

3. Following the subsequent decision on March 26, 1945, of Phillips v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876, the Sixth Circuit Court of Appeals, in Fletcher v. Grinnell Bros., 150 F.2d 337, 339, reversed the judgment herein on July 9, 1945, and held that: ·

"The Grinnell Company falls within the category of a chain store organization. Here, as in the Phillips case, appellant employees 'are performing wholesale duties in the very midst of the stream of interstate commerce. They constantly deal with both incoming and outgoing interstate shipments.' (Citing cases.) * * * all appellant employees are entitled to the benefits of the provisions of the Fair Labor Standards Act, unless certain of them are exempted from the operation of the statute by virtue of Section 13(b) (1) of the Act, 29 U.S.C.A. § 213(b) (1), which in so far as here applicable, provides that such statute shall not cover 'any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service,' pursuant to the provisions of the Motor Carrier Act, 49 U.S.C.A. § 301 et seq."

Thereafter, in an unreported opinion [1] dated September 10, 1945, the Circuit Court of Appeals denied defendant's motion for rehearing, holding that its determination that the parties were engaged in interstate commerce was in accordance with admissions made in defendant's answers to the complaint and to interrogatories. These answers have never been amended.

4. Further hearings were held under the mandate, and final hearing withheld pending progress through the Supreme Court of Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158; Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184; and Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, each of which involved the Interstate Commerce Commission exemption. Since decision of the last cited case, final hearing has been held herein.

5. As this record now stands, the Circuit Court of Appeals has determined that each of the plaintiffs herein was engaged in interstate commerce in connection with his employment at defendant's warehouse within the general terms of the Fair Labor Standards Act, which determination has never been reversed or overruled, and, since remand of this case, the Supreme Court, in the cases cited in finding 4, has defined the test to be applied in determining whether an employee is within the Interstate Commerce Commission exemption as,—the character of the employee's activities in relation to safety of interstate motor transportation rather than the proportion of either his time or his activities devoted to duties relating to safety of such operation.

6. Except for plaintiffs William C. Wiley, Frank Miller, Arthur Hoolihan and Morgan Dohm, each of the other

---

twelve plaintiffs worked regularly either as a driver of, or a driver's helper on, defendant's trucks, and findings 7 to 9, inclusive, relate to such latter twelve plaintiffs.

7. All of these drivers and drivers' helpers were employed at and worked out of defendant's warehouse and garage in Detroit, Michigan. The trucks they drove, or on which they worked as drivers' helpers, were used by defendant for three major purposes: to load merchandise coming from outside Michigan at the Detroit depots, docks and warehouses of interstate carriers and transport such merchandise to the defendant's warehouse; to transport merchandise from defendant's warehouse to its various retail stores, of which there were 23 in Michigan, 1 in Toledo, Ohio, and 1 in Windsor, Ontario, Canada; and to deliver merchandise sold in the Detroit retail stores to defendant's customers, making such deliveries partly from the stores but for the most part from the warehouse stock. Prior to October, 1940, these trucks also carted manufactured goods from defendant's Holly manufacturing plant to its Detroit warehouse. In so far as these plaintiffs spent their time driving or loading defendant's trucks, their activities directly affected the safety of operation of motor vehicles, and these duties were a natural, integral and inseparable part of defendant's operations as a private carrier of its own merchandise. When not employed on defendant's trucks, these plaintiffs worked at defendant's warehouse loading and unloading trucks and arranging stock.

8. Defendant did not keep records showing in detail the percentage of daily time each of these plaintiffs spent in making deliveries to retail stores and in "hitting the docks and depots" for incoming interstate merchandise. However, defendant kept daily delivery sheets, which show on what days each plaintiff was engaged in making deliveries, and whether these deliveries were to retail stores, customers or distributors. Defendant submitted in evidence a compilation of the data contained in these daily delivery sheets for a representative six month period from October 1, 1940, to March 31, 1941. Numerous deliveries to retail stores from the warehouse and numerous deliveries to the warehouse from docks and depots were made by numerous of these plaintiffs each week. These drivers and drivers' helpers themselves testified, and, while there are minor variations in their respective claims, in general their testimony falls into a pattern. That is, on the average, each of them spent about two-thirds of his time in making deliveries to retail stores and to customers, and in receiving and transporting incoming interstate shipments from Detroit docks and depots to defendant's warehouse. On the average, the greater part of the time of each of these plaintiffs was spent in making deliveries from the warehouse of merchandise which was still in interstate commerce because it had not yet come to rest in Michigan, and, on the average, about sixty percent of these deliveries were to defendant's retail stores.

9. Each plaintiff who was employed as a truck driver or as a driver's helper was engaged in interstate commerce during each week of his employment. Deliveries from the warehouse to retail stores formed a customary, usual and routine part of the activities of each such plaintiff. At least once each week a trip was made by each of these plaintiff's to the docks and depots in Detroit to pick up incoming interstate freight. Some of these plaintiffs' routine included a trip to Toledo once every two weeks; others, two trips a week to Toledo. Some of these plaintiffs' routine included a trip each week from defendant's warehouse to the Detroit entrance of the Detroit & Canada Tunnel with merchandise in transit to the Windsor store. Each of these plaintiffs spent a substantial part of his time in interstate driving each week.

10. Part of the regular duties of plaintiffs William C. Wiley and Frank Miller as garage watchmen and warehouse helpers, was to help load defendant's trucks and assist on deliveries as truck drivers' helpers. As loaders and drivers' helpers, their work directly affected the safety of operation of these trucks, which were regularly and customarily driven in interstate commerce in the manner heretofore detailed.

11. Part of the regular duties of plaintiff Morgan Dohm, as warehouse watch-

man, was to help load defendant's trucks, which were customarily and regularly driven in interstate commerce in the manner heretofore detailed. As a loader his work directly affected the safety of operation of these trucks.

12. As to plaintiff Arthur Hoolihan, whom defendant claims was employed in a bona fide executive or administrative position, his salary was $105 per month, which is less than $30 per week for an executive, or the $200 per month for an administrative position, prescribed by the Administrator in the definition of these positions appearing in Code of Federal Regulations, Title 29, Secs. 541.1 and 541.2. However, as part of this plaintiff's duties as warehouseman, he regularly assisted as a driver's helper on defendant's trucks, which were customarily and regularly driven in interstate commerce in the manner heretofore detailed, and such duties directly affected the safety of operation of these trucks.

13. With its proposed findings of fact and conclusions of law submitted in connection with final hearing herein, defendant for the first time interposed an additional defense under the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq., namely, that defendant had acted in good faith in its contention that it was not liable to plaintiffs for any additional compensation under the Fair Labor Standards Act, particularly in view of decisions of various courts at various times on the problems involved herein. Following the precedent of DeWaters v. Macklin Co., 6 Cir., 167 F.2d 694, both as to procedural and substantive law, I find that defendant neither pleaded nor proved such defense, because it was not raised in any pleading nor was such an issue covered by the evidence herein, although under my ruling herein this additional defense is not necessary.

## Conclusions of Law

■ 1. This court has jurisdiction of this action brought under the Fair Labor Standards Act, as one brought under a law regulating commerce, involving parties located in this District. 29 U.S.C.A. § 201 et seq.; 28 U.S.C.A. § 41(8); 28 U.S.C.A. § 112.

■ 2. This court is bound by the law of this case as determined by the Sixth Circuit Court of Appeals unless and until reversed or overruled by the United States Supreme Court, which includes the holdings detailed in finding '5.

■ 3. Where, as here, it appears that each employee-plaintiff regularly and customarily performed duties affecting the safety of operation of motor vehicles used for interstate transportation of defendant-employer's merchandise, and such duties were shared indiscriminately among plaintiffs and mingled with their performance of other like services in intrastate commerce, the Interstate Commerce Commission has power to establish qualifications and maximum hours of service for them pursuant to the provisions of the Motor Carrier Act, 49 U.S.C.A. § 301 et seq., and, consequently, such employees are exempted from coverage of the Fair Labor Standards Act under 29 U.S.C.A. § 213 (b) (1). Southland Gasoline Co. v. Bayley, 319 U.S. 44, 63 S.Ct. 917, 87 L.Ed. 1244; Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158; Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184; Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131; Beggs v. Kroger Co., 8 Cir., 167 F.2d 700; Rogers Cartage Co. v. Reynolds, 6 Cir., 166 F.2d 317.

■ 4. Where, as here, it appears that any one of the qualifications defined for an executive or administrative employee is lacking, such employee is not exempt from the Fair Labor Standards Act as an executive or administrative employee. Consequently, the fact that plaintiff Hoolihan was compensated at less than the salary specified for either an executive or administrative employee precludes the application of the exemption contained in 29 U.S.C.A. § 213(a) (1) to him. Walling. v. Morris, 6 Cir., 155 F.2d 832, 836, rev. on other grounds, sub. nom. Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131.

■ 5. Where, as here, it appears that an employer-defendant has neither pleaded nor proved the defense of good faith

under the Portal-to-Portal Act of 1947, its request for a ruling in its favor on such defense should be overruled. DeWaters v. Macklin Co., supra.

6. Judgment in accordance herewith is being entered simultaneously herewith.

### Judgment

In accordance with the foregoing findings of fact and conclusions of law, it is hereby ordered and adjudged that none of the plaintiffs herein recover anything from the defendant upon the cause of action alleged herein for the reason that said plaintiffs are exempt from coverage of the Fair Labor Standards Act because the Interstate Commerce Commission has power to establish qualifications and maximum hours of service for them pursuant to the provisions of the Motor Carrier Act.

It is further ordered and adjudged that the defendant's motion to amend its answer to allege that plaintiff Hoolihan was exempt from coverage of the Fair Labor Standards Act because he was employed in an executive or administrative position is overruled.

It is further ordered and adjudged that defendant has neither pleaded nor proved the defense of good faith under the Portal-to-Portal Act of 1947.

