## BUCKNER et al. v. VOSS TRUCK LINES, Inc.

### Civ. A. No. 4517.

United States District Court
W. D. Oklahoma.

Sept. 11, 1950.

James E. Grigsby and Schwoerke & Schwoerke, Oklahoma City, Okl., for plaintiffs.

Lee Gill, Oklahoma City, Okl., for defendant.

VAUGHT, Chief Judge.

This is an action under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., for overtime compensation, plus an additional equal amount as liquidated damages, attorney fees and costs.

Plaintiff Leslie L. Buckner alleges he was employed as a body man and painter, at an hourly wage of $1.35 for a period of 48 weeks. That during said time he worked 9 hours per day, 6 days a week, or a total of 54 hours. That the defendant violated section 207 of the Act by failing to pay the plaintiff 1½ times his regular wage for the hours he worked in excess of 40 hours per week.

Plaintiff Taylor Ray Greeson alleges he was employed as a body man and painter, at an hourly wage of $1, and worked similar hours for a period of 24 weeks. That the defendant violated section 207 of the Act by failing to pay him 1½ times his regular wage for the hours he worked in excess of 40 hours per week.

The defendant in its answer, among other things, contends that the character of work performed by plaintiffs is exempt from the provision of the Act.

Title 29 U.S.C.A. § 207, provides that the workweek shall be 40 hours and that if the employee is required to work beyond 40 hours, he will be entitled to receive pay "at a rate not less than one and one-half times the regular rate at which he is em-

484

ployed." Section 216 provides that in an action to recover the plaintiff is entitled to recover the unpaid overtime compensation, an additional equal amount as liquidated damages, reasonable attorney's fee, and costs of the action.

The defendant contends that it is not liable, under section 213(b) of the Act which reads: "The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; * * *."

Title 49, section 304 provides: "It shall be the duty of the Commission—(1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment."

In Code of Federal Regulations, 1949 Ed., Title 29—Labor, p. 269, is found the following, pertinent here: "Section 782.6 Mechanics. (a) A 'mechanic,' as defined by the Interstate Commerce Commission, is an employee who is employed by a carrier subject to the Commission's jurisdiction under section 204 of the Motor Carrier Act and whose duty it is to keep motor vehicles operated in interstate or foreign commerce by his employer in a good and safe working condition. The Commission has determined that the safety of operation of such motor vehicles on the highways is directly affected by those activities of mechanics, such as keeping the lights and brakes in a good and safe working condition, which prevent the vehicles from becoming potential hazards to highway safety and thus aid in the prevention of accidents. The courts have held that mechanics perform work of this character where they actually do inspection, adjustment, repair or maintenance work on the motor vehicles themselves (including trucks, tractors and trailers, and busses)

and are, when so engaged, directly responsible for creating or maintaining physical conditions essential to the safety of the vehicles on the highways through the correction or prevention of defects which have a direct causal connection with the safe operation of the unit as a whole. The following activities performed by mechanics on motor vehicles operated in interstate or foreign commerce are illustrative of the specific kinds of activities which the courts, in applying the foregoing principles, have regarded as directly affecting 'safety of operation': The inspection, repair, adjustment, and maintenance for safe operation of steering apparatus, lights, brakes, horns, windshield wipers, wheels and axles, bushings, transmissions, differentials, motors, starters and ignition carburetors, fifth wheels, springs and spring hangers, frames, and gasoline tanks. Inspecting and checking air pressure in tires, changing tires, and repairing and rebuilding tires for immediate replacement on the vehicles from which they were removed have also been held to affect safety of operation directly. The same is true of hooking up tractors and trailers, including light and brake connections, and the inspection of such hookups."

There has been much litigation concerning the contentions of the parties here, which has reached the Supreme Court in a number of cases. In United States et al. v. American Trucking Associations, Inc. et al., 310 U.S. 534, 553, 60 S.Ct. 1059, 1069, 84 L.Ed. 1345, the statute was under direct attack and was upheld as follows:

" * * * It is evident that the exempted vehicles and operators include common, contract and private carriers. It seems equally evident that where these vehicles or operators were common or contract carriers, it was not intended by Congress to give the Commission power to regulate the qualifications and hours of service of employees, other than those concerned with the safety of operations.

"Our conclusion, in view of the circumstances set out in this opinion, is that the meaning of employees in Section 204(a) (1) and (2) is limited to those employees whose activities affect the safety of op-

eration. The Commission has no jurisdiction to regulate the qualifications or hours of service of any others. * * *"

This case was followed in Southland Gasoline Company v. Bayley et al., 319 U. S. 44, 63 S.Ct. 917, 87 L.Ed. 1244.

In Levinson v. Spector Motor Service, 330 U.S. 649, 685, 67 S.Ct. 931, 948, 91 L.Ed. 1158, the question arose as to whether loaders of the trucks were exempt, and the court said: "Our conclusion is that, under the Motor Carrier Act, the Interstate Commerce Commission has power to establish qualifications and maximum hours of service for those employees whose service affects the safety of transportation of common carriers, contract carriers or private carriers of property in interstate and foreign commerce; that such Commission has been charged with the administration and enforcement of that Act; and that in the course of performance of its duties and after extended hearings on the subject, it has found that the work of loaders, as defined by it, affects safety of motor carrier operation. Furthermore, we conclude, upon the findings of the lower courts in this case, that the petitioner was employed by a motor carrier of interstate freight within the meaning of the Motor Carrier Act and that, throughout the period at issue, a substantial part of his activities consisted of doing, or immediately directing, the work of one or more loaders as defined by the Interstate Commerce Commission and affecting the safety of operation of motor vehicles in interstate or foreign commerce; that, accordingly, the Commission, with respect to him, had power to establish qualifications and maximum hours of service; and that, by virtue of § 13(b) (1) of the Fair Labor Standards Act, the provisions of § 7 of that Act as to overtime pay were rendered inapplicable to him. * * *"

Again the Supreme Court expressed itself as to the principles of law involved in another "loading case" in Pyramid Motor Freight Corporation v. Ispass et al., 330 U.S. 695, 707, 67 S.Ct. 954, 960, 91 L.Ed. 1184, as follows:

"The District Court, in applying § 204 of the Motor Carrier Act to respondents, will determine whether or not the activities of each respondent, either as a whole or in substantial part, come within the Commission's definition of the work of a 'loader.' In determining whether the activities, or any substantial part of the activities, of an individual come within those of such a 'loader,' the District Court shall not be concluded *by the name* which may have been given to his position or to the work that he does, nor shall the District Court be required to find that any specific part of his time in any given week must have been spent in those activities. * * *

"If none of the alleged 'loading' activities of the respective respondents, during the periods at issue, come within the kind of activities which, according to the Commission, affect the safety of operation of motor vehicles in interstate or foreign commerce within the meaning of the Motor Carrier Act, then those respondents of which that is true are entitled to the benefits of § 7 of the Fair Labor Standards Act. On the other hand, if the whole *or a substantial part* of such alleged 'loading' activities of the respective respondents, during the periods at issue, do come within the kind of activities which, according to the Commission, affect such safety of operation, then those respondents who are engaged in such activities are excluded from the benefits of such § 7. * * *" (Emphasis supplied.)

The whole question was again before the court in Morris v. McComb, Wage and Hour Administrator, 332 U.S. 422, 431, 437, 68 S.Ct. 131, 135, 92 L.Ed. 44, wherein the court said:

"As to these drivers and these 'mechanics' whose work affects safety of transportation, the first question here, as in the Levinson case, is whether the Commission has the power, under § 204 of the Motor Carrier Act, to establish qualifications and maximum hours of service with respect to them. The special situation presented is that, on the average, only about 4% of their time and effort has been, or is likely to be, devoted to services in interstate commerce. The issue would appear in its simplest form if each driver were required, each day, to devote 24 minutes (i.e., 4% of his allowable daily aggregate of ten hours of driv-

ing· time) to driving in interstate commerce. The question then would be whether the Commission has the power to establish his qualifications and maximum hours of service in view of the relation of this driving to safety of operation in interstate commerce. Under the tests of the Commission's power, as approved in both the majority and minority opinions in the Levinson case, and, under the analysis of that power developed by the Interstate Commerce Commission and cited in that case, it is 'the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the Commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment.' It is beyond question that, under such circumstances, § 204 (a) (1) of the Motor Carrier Act has authorized the Commission to establish reasonable requirements with respect to qualifications and· maximum hours of service of such drivers. The Fair Labor Standards Act, which was passed three years later, has recognized and does not restrict the Commission's power over the safety of operation under the Motor Carrier Act. What is thus true for the driver is true also for the *mechanic who repairs his truck.* (Emphasis supplied.)

\* \* \* \* \* \*

"Having determined that the Commission has the power to establish qualifications and maximum hours of service for these drivers and 'mechanics' under § 204 of the Motor Carrier Act, the question recurs as to whether, in the face of the exemption stated in § 13(b) (1) of the Fair Labor Standards Act, the requirements of § 7 of that Act nevertheless apply to these employees. This issue as to the possible reconciliation of the language of these Acts so as to provide for concurrent jurisdiction was considered at length in the Levinson case and the conclusion was there reached that such a construction was not permissible."

The law is well settled and it only remains to apply it to the facts disclosed by the evidence. The defendant Voss Truck

Lines, Inc., is engaged in the motor truck transportation business in the moving of goods in interstate commerce. It operates a fleet of 75 to 80 trucks and trailers and covers several states in its operations. Its principal place of business is in Oklahoma City, Oklahoma, and it maintains shops for repairs, maintenance and upkeep of its equipment in which it employs seven or eight mechanics, full time, paying them from $1 to $1.45 per hour. It is generally understood by the mechanics that a large part of the work to be performed is in safety of operation of the fleet of trucks and trailers. The employees are hired for 9 hours per day for 6 days per week, or a total of 54 hours per week, and are paid time and a half for overtime beyond 54 hours per week. The plaintiffs were employed upon that basis and never raised the question of time and a half for overtime beyond 40 hours per week until they had ceased to work for defendant. The repair and maintenance shops occupied the rear end of the building in which the offices were located and a building across the street. The precision work and general overhauling were done in the rear shop although some of the overhauling was done in the shop across the street as occasion demanded. The painting, glass work, repairing of lights, straightening and welding of fenders, repair and installation of windshield wipers, some fifth wheel work and many other repairs were made in the shop across the street, including repair of bodywork and trailers, et cetera.

The plaintiffs contend they were hired as "paint and body men." In this they are not in accord with the testimony of those who hired them. True, among their various qualifications as mechanics, they could paint, and they were assigned that work which, according to the evidence, took about 15 per cent. of their time. At other times they worked at whatever mechanical work they were required to do, a large part of which there is no doubt was in "safety of operation." Plaintiff Greeson, Buckner's helper, made a regular check each morning of the trucks and trailers that came in during the night. He testified that there would be from three or

four to a dozen, and he would place a red card on each to denote what he found wrong. The evidence discloses that the plaintiffs almost exclusively looked after the "hooking-up job" on the vehicles that left the plant, which is a highly important factor in safety of operation. The evidence further discloses that 50 to 75 per cent. of the time of the plaintiffs was expended in looking after duties directly connected with safety of operation. This evidence comes from fellow employees and fellow mechanics, as well as their employer. The authorities hold that it is not what the position is designated but the duties that are performed, that determine whether the exemption applies, and that if a substantial part of the duties performed comes within safety of operation the mechanic is exempt.

The court is of the opinion that under this evidence the plaintiffs are not entitled to recover.

Findings of fact, conclusions of law and a proper form of judgment may be submitted within 10 days from this date.