**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**CADDELL TRANSIT CORPORATION, a Corporation, and M. N. Caddell, an Individual, Defendants.**

Civ. No. 65-96.

United States District Court
W. D. Oklahoma.

April 18, 1966.

———◆———

Richard L. Collier, Trial Atty., U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

Morgan, Dykeman & Williamson, Oklahoma City, Okl., for defendants.

DAUGHERTY, District Judge.

In this case the plaintiff seeks to enjoin defendants from violating the provisions of Section 15(a)(2) of the Fair Labor Standards Act of 1938, Title 29 U.S.C. § 215(a)(2) and restrain the withholding of overtime compensation claimed to be due certain employees of the defendant under said Act. Plaintiff claims that the defendants employ drivers in and about their terminal at Enid, Oklahoma, to haul asphalt and related products used in road and street construction and maintenance; that such products were used in building and repairing roads and highways which regularly carried persons and goods moving in interstate commerce and by reason thereof these employees of the defendants are regularly engaged in interstate commerce as defined by the Fair Labor Standards Act. The plaintiff further claims that during the period March 3, 1963, to March 19, 1965, certain of these employees worked in excess of 40 hours per work week but were not paid one and one-half times the regular rate for such overtime but instead were paid for overtime at the regular rate.

The defendants first deny that M. N. Caddell, the individual defendant, is in any way involved in this matter as an individual, which the Court finds to be so under the evidence presented, and the Complaint is dismissed as to M. N. Caddell, an individual, for that reason. The Caddell Transit Corporation, by way of defense, denies that it is subject to the above provisions of the Fair Labor Standards Act by reason of being exempt therefrom under the provisions of Section 13(b)(1) of said Act, Title 29, United States Code, § 213(b)(1) which provides that provisions of the Fair Labor Standards Act shall not apply with respect to:

> "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 304 of Title 49."

The defendant raises other defenses which will not be considered in view of the findings, conclusions and decision reached by the Court on the above exemption issue.

At the trial before the Court, the evidence indicates that the defendant was and is engaged in hauling asphalt and related products as a common carrier under an Interstate Commerce Commission permit to haul such products from Oklahoma into Texas and New Mexico. The defendant has its headquarters at Lawton, Oklahoma, has a terminal at Ardmore, Oklahoma, a terminal at Cyril, Oklahoma, and a terminal at Enid, Oklahoma. It appears that the defendant has trucks at all three terminals and does maintenance work at all three terminals. It has no trucks or maintenance facilities at Lawton. All vehicles are licensed to operate in Texas and about a fourth are licensed to operate in New Mexico. All drivers are approved for employment at Lawton, after an investigation is made, but applications for employment may be received at any of the three terminals as well as at Lawton. It further appears that the defendant operates on an integrated basis and interchanges equipment and drivers between its three terminals on occasion as necessary. However, for the most part, drivers live at or near, and work out of one of the three terminals. Orders received are handled by the nearest terminal based upon the location of the nearest terminal to the location of the shipment. It seems that around the end of 1961 and continuing during the period March, 1963, to March, 1965, the defendant received no orders from customers and hauled no asphalt to points outside of Oklahoma using drivers or equipment working out of the Enid terminal even though such drivers and equipment were qualified and ready under Interstate Commerce Commission requirements at all times to make such hauls upon being requested by a shipper. Out of state shipments were regularly and frequently made by drivers and equipment based at or working out of the other two terminals. It further appears from the evidence and the Court finds that the defendant did not in any way attempt to funnel its interstate shipments away from the Enid terminal or to the Cyril and Ardmore terminals, nor did it attempt to funnel intrastate shipments into the Enid terminal and away from its Ardmore and Cyril terminals. It appears that certain asphalt shippers in the vicinity of the Enid terminal have been and are soliciting orders in New Mexico, but recently have not been successful; that if they had received any such orders they would have been shipped from the Enid terminal and transported into New Mexico by the defendant but they have not been the low bidders and have not been successful recently in their bidding and solicitation of orders in New Mexico. It appears that the Interstate Commerce Commission has at all times supervised and regulated the entire operation of the defendant including all of its terminals, all of its drivers and mechanics and all of its rolling stock.

At the trial of the case, the plaintiff, in effect, requested an order separating the Enid terminal operation from the balance of the defendant's operation and requiring defendant to pay time and one-half for overtime to all of the Enid drivers and maintenance personnel. Plaintiff's counsel stated that it was agreeable that if the Enid terminal ever started driving out-of-state again such order may be considered as then being terminated.

The plaintiff urges that the case of Goldberg v. Faber Industries, Inc. (7th Cir. 1961), 291 F.2d 232, gives approval to such an arrangement and order. In the Faber case, a private carrier collecting meat scraps for its rendering plants had five permanent routes and drivers operating across a state line and 15 permanent routes and drivers operating wholly upon highways of a single state. By stipulation there was no "instance where a scrap driver who is regularly assigned to an intrastate route, ever handled an interstate route." Faber operated as a private carrier and was not required to receive and haul ship-

ments as a common carrier in interstate commerce. Faber established all of its routes which were permanent and assigned its drivers to the same. The Interstate Commerce Commission filed an amicus curiae brief and agreed it had no power or jurisdiction over the 15 drivers operating on routes wholly located within a single state. The Court of Appeals held that the five interstate drivers came under the Interstate Commerce Commission and the 15 intrastate drivers were subject to the overtime provisions of the Fair Labor Standards Act. This opinion distinguished its facts and result from the case of Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44, by pointing out that in Morris a common carrier was involved operating from a central garage where the employees formed a single pool of drivers; that any one of these drivers was likely to be called upon to handle an interstate trip and that even those drivers who had never handled an interstate shipment were subject at any time to be assigned an interstate trip; that the Company did not discriminate between its drivers regarding interstate trips.

Plaintiff cites Walling v. Comet Carriers (2nd Cir. 1945), 151 F.2d 107. This case was decided two years before Morris v. McComb, supra. This case does provide that a ruling by the Interstate Commerce Commission that employees of a trucking company are subject to their regulation though not binding on courts would be accorded great weight. Also, the case provided that it is the existence of the power of the Interstate Commerce Commission to regulate and not the actual exercise of such power that is determinative of exemptions from the Fair Labor Standards Act.

Plaintiff also cites Levinson v. Spector Motor Company, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158, and Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184, but these cases only extended the regulatory power of the Interstate Commerce Commission to include loaders, checkers and foremen dealing with interstate shipments.

The defendant relies on the case of Morris v. McComb, supra. This case held that the Fair Labor Standards Act exempts from its overtime pay requirements any employee with respect to whom the Interstate Commerce Commission has, under the Motor Carriers Act, power to establish qualifications and maximum hours of service. It appears in the case at hand and the Court finds that the Interstate Commerce Commission, under the Motor Carriers Act, has this power to establish qualifications and maximum hours of service regarding the entire operation of defendant and all of its drivers, mechanics, and rolling stock and, in fact, the Interstate Commerce Commission is exercising and has for many years exercised such power over the entire operation of the defendant. During the period involved, 2108 interstate trips were made actually crossing state lines and going into New Mexico or Texas, and 11,218 trips were made wholly within the State of Oklahoma. 15.82% of the total trips of defendant during the approximate two year period involved were interstate trips, and 84.18% of the trips during said period were intrastate. The case of Morris v. McComb, supra, held that all truck drivers and maintenance employees of a cartage company came within the above mentioned exemption where the drivers were engaged indiscriminately in the performance of service in which no truck crossed a state line, and less than 4% of the services rendered by the carting company was in transporting from and to shipping terminals goods having an out-of-state origin or destination.

The Morris v. McComb case held that *all* drivers and maintenance personnel of the cartage company were exempt from the Fair Labor Standards Act, and this even though no trips crossed a state line, some drivers did not engage in any hauling of goods for an out-of-state origin or destination and only 4% of the total services were so involved. Mr. Justice Rutledge, in dissenting in said case, complained about the majority opinion holding " * * * that all employees driv-

ing for a company engaged principally in intrastate commerce but doing a very small amount of interstate commerce would be lumped together, for purposes of the exclusion, on the basis of the proportionate amounts of work done by the company in those phases of its business." This is indeed what the majority opinion held when it said that the Interstate Commerce Commission has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act for the "entire classification of petitioner's drivers and 'mechanics'". The case further held that it is the *existence* of such *power* that Congress has established as the test as to whether or not provisions of the Fair Labor Standards Act are applicable to employees. It is significant to note from this opinion that it is "the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Interstate Commerce] Commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment." And also to note that the United States Supreme Court in such case held that the proposition "as to the possible reconciliation of the language of these Acts (Motor Carrier Act and the Fair Labor Standards Act) so as to provide for concurrent jurisdiction was considered at length in the Levinson case (Levinson v. Spector Motor Service, supra) and the conclusion was there reached that such a construction was not permissible." The effect of this holding is that it is not permissible to provide that the Interstate Commerce Commission should have and exercise its power over a carrier and at the same time require such carrier to comply with the overtime provisions of the Fair Labor Standards Act.

The only issue novel in this case and not present in Morris v. McComb, supra, is the proposition, not pleaded by the plaintiff but urged at the trial, that the Court should isolate or separate or treat as a separate segment the Enid terminal of the defendant and its drivers and place them under the Fair Labor Standards Act provision calling for time and one-half pay for overtime but not so provide for the drivers of the defendant operating out of its Ardmore and Cyril terminals. The plaintiff is indifferent as to what the Interstate Commerce Commission may have to say about such an arrangement and shows no interest in bringing it into this case. Such proposition urged by plaintiff overlooks the effect it would have on the interchanging by defendant of equipment and drivers between its terminals which is believed to be a normal practice in this type and size of operation (40 trucks) and ignores the plain language of Morris v. McComb.

The only difference the Court can find in the situation at hand and that in the Morris v. McComb case is that the defendant here operates out of three terminals whereas apparently in the Morris case the cartage company operated out of only one terminal. In Morris, there was no finding of discrimination by the company among its employees as to who would work the interstate shipments. Such is also the evidence in this case and the Court finds that there is no evidence that the defendant has discriminated with reference to any of its drivers or terminals with reference to handling interstate or intrastate shipments. The evidence shows that all shipments were handled as tendered from customers by the nearest terminal, and with drivers and equipment there available.

The Court is not willing to adopt the proposal of the plaintiff, and indeed feels lacking in authority to do so, and segregate the Enid terminal from the rest of the defendant's operation and place only its Enid drivers under the Fair Labor Standards Act in the face of the interstate character of the defendant's overall business, its status as a common carrier under an Interstate Commerce Commission permit covering three states, the power and the actual exercise of power over all of the defendant's operations by

the Interstate Commerce Commission and the many serious management problems that would be imposed upon the defendant not to mention the creation of a conflict between the Interstate Commerce Commission and the Department of Labor.

Further, the Court feels that the operation involved herein more nearly resembles that present in Morris than in Faber. In Morris and here, we have a common carrier and not a private carrier and private routes as in Faber. In Morris and here, there is no discrimination by the employer as to what drivers make interstate trips, whereas in Faber the employer establishes each private route as he sees fit and assigns drivers in the same manner. In Faber, the Interstate Commerce Commission gave up any jurisdiction over the intrastate drivers, whereas here the Interstate Commerce Commission is actively supervising and regulating all drivers and equipment of the defendant, and the plaintiff resisted the suggestion of the Court that perhaps the Interstate Commerce Commission should be invited into this litigation.

Accordingly, the Complaint of the plaintiff is dismissed. Counsel for defendant will prepare an appropriate judgment in conformity with the foregoing for entry herein.