369 F.2d 927
 W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellant,
v.
TYLER PIPE AND FOUNDRY COMPANY, Appellee.
TYLER PIPE AND FOUNDRY COMPANY, Appellant,
v.
W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellee.
 No. 23489.
 United States Court of Appeals Fifth Circuit.
 December 19, 1966.
 
 Bessie Margolin, Assoc. Sol., Robert E. Nagle, Atty., Charles Donahue, Sol. of Labor, Caruthers G. Berger, Atty., Dept. of Labor, Washington, D. C., Major J. Parmenter, Regional Atty., for appellant and cross-appellee.
 Jerry L. Buchmeyer, William H. Neary, Dallas, Tex., for appellee and cross-appellant, Thompson, Knight, Simmons & Bullion, Dallas, Tex., of counsel.
 Before BROWN, COLEMAN and AINSWORTH, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 The Secretary of Labor brought this suit under Section 16(c) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.) to recover overtime compensation claimed to be due under Section 7 of the Act to D. C. Mangrum, a former employee of Tyler Pipe and Foundry Company, defendant, for the period February 26, 1963 to September 12, 1964. Tyler Pipe operates a foundry at Swan, Texas, where it produces cast iron and fittings, approximately 70 per cent of which was shipped in its own trucks in interstate commerce as a private carrier.
 
 
 2
 It is agreed that the employee is within the Act's general coverage, but defendant contends that Mangrum's employment was exempt from the overtime provisions by virtue of Section 13(b) (1) of the Act which exempts employees for whom the Interstate Commerce has power to establish qualifications and maximum hours of service pursuant to Section 204 of the Motor Carrier Act (see 49 U.S.C. § 304). Mangrum worked in excess of forty hours each week, and defendant has refused to compensate him for overtime for the excess hours. The question for decision, therefore, is whether Mangrum's employment is exempt from the overtime provisions of the Act by virtue of being subject to the motor carrier exemption which is limited to certain employees whose activities affect the safety of operations of vehicles in interstate commerce.
 
 
 3
 The district judge held that Mangrum was not within the exemption during the period February 26, 1963 through December 31, 1963, but was exempt during the period January 1, 1964 through September 12, 1964 and rendered judgment accordingly. Both parties have appealed from this judgment insofar as it adversely affects them.
 
 
 4
 Mangrum was employed in defendant's garage, working six days a week, excluding Sundays, eight hours per day. The trial judge found that during the first ten months his work consisted primarily of service and repair work on fork lifts "and front end Loaders," the industrial machines used in the manufacturing operations, and thereafter he was employed to do service and repair work on industrial machinery; that during the years 1963 and 1964, Mangrum, a Class C automotive mechanic, was with all of the other Class A, B and C mechanics employed in defendant's garage, subject to being called upon at any time and during any day of the week as part of their regular duties and in the ordinary course of their work, to perform "line-up" work on diesel trucks owned by the defendant and used to transport its property in interstate commerce. The line-up work was done on each work day but was especially heavy on Saturdays. The court found that the shift foreman simply picked garage employees at random to do this work and Mangrum was called upon at any time, and as part of his regular duties, and in the ordinary course of his job to perform such work. However, the court held that he did no line-up work in 1963, but in 1964 he did line-up work on Saturdays in sixteen work weeks, the amount and frequency on these particular Saturdays not being stated in the record. Line-up work was performed by Mangrum in the following way: He received instructions from the shift foreman which particular tractor he was to hook up with a particular trailer at the loading dock. He then drove the tractor from the parking area to the loading dock and hooked it up to the proper loaded trailer unit which involved connection and inspection of the two air brake hoses, connection and inspection of the fifth wheel and connection and inspection of the light system, including brake lights. The court said that this work directly affected the safety of operations of motor vehicles in interstate commerce. After completing the line-up work Mangrum drove the tractor-trailer to the fuel pump and left it there for handling by others. This was the only work performed by Mangrum on trucks operated in interstate commerce. After the tractor-trailer was left at the fuel pump it was fueled and driven by others to the body shop where an inspection was made by the service crew to determine if the brakes, lights, tires, windshield wipers and mud skirts for the back wheels were in order and in good condition. If so, the tractor-trailer was driven to the line and parked to await the driver who took it out. The defendant's garage was divided into three areas: the first section known as the fork truck shop was that in which Mangrum was regularly employed where industrial machinery only was serviced or repaired; the second section was the diesel truck garage where tractors and over-the-road motor equipment was serviced or repaired; the third section was the trailer shop where trailers were similarly checked and repaired and where the service crew (other than Mangrum) checked the hooked-up tractor-trailer prior to it being driven to the line to await the driver. Under these circumstances, the district judge held that the exemption in Section 13(b) (1) of the Act did not apply for the year 1963 but did apply in the year 1964.
 
 
 5
 Defendant's principal authority is the decision in Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947), whereas plaintiff's reliance is on Pyramid Motor Freight Corporation v. Ispass, 330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184 (1947), decided by the Supreme Court several months prior to Morris. Defendant contends that under Morris v. McComb, Mangrum's employment was exempt from the requirements of the Fair Labor Standards Act even though the total period of employment involved discloses only sixteen Saturdays when some line-up work was done by the employee. Defendant states that the holding in Morris is that "* * * it is `the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the Commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment.'" Therefore, defendant contends that Mangrum was subject to being called at any time to do line-up work, both in the years 1963 and 1964, and should be classified as an exempt employee not subject to the overtime provisions of the Act. The facts in Morris, though having some analogy to those here, are not the same and the case is clearly distinguishable. The employees involved there were drivers and mechanics, all of whom were fully engaged full time and continuously in safety-affecting work, sharing indiscriminately in the interstate operations of the employer who operated a general cartage business as a motor common carrier in the metropolitan Detroit area and contiguous counties. On the average, in Morris, only about 4 per cent of the drivers' and mechanics' time was devoted to service in interstate commerce; however, this activity was not equally distributed to each driver. The Court held that the applicability of the Interstate Commerce Commission's requirements as to specific drivers during specific weeks was not the issue but it was the fact that the Commission had power to establish qualifications and maximum hours of service, pursuant to Section 204 of the Motor Carrier Act, for the entire classification of the employees, drivers and mechanics that determined that these employees were exempt from Section 7 of the Fair Labor Standards Act pertaining to overtime compensation. The Court held that the employees were exempt from the Act in all work weeks, including those in which no interstate commerce work was performed because "* * * apparently in the normal operation of the business, these strictly interstate commerce trips were distributed generally throughout the area and their performance was shared indiscriminately by the drivers and was mingled with the performance of other like driving services rendered by them otherwise than in interstate commerce. These trips were thus a natural, integral and apparently inseparable part of the common carrier service of the petitioner and of his drivers."
 
 
 6
 That is not the case here. Mangrum's regular duties as a mechanic for Tyler Pipe were carried on in service and repair only of industrial machinery such as fork lifts and front end loaders. He was not a motor vehicle mechanic and was never employed in the garage in repair and service of defendant's tractors and trailers used in the delivery of its products in interstate commerce. He was sporadically and infrequently called on in the year 1964 on Saturdays of sixteen work weeks to perform line-up work which was preceded and followed by the work of other mechanics and employees as to both service and inspection. He was not regularly employed in safety-affecting work. Accordingly, the case is more nearly like Pyramid Motor Freight Corporation v. Ispass, supra, in which the Supreme Court held that under the facts of that case the mere handling of freight at a terminal by so-called loaders, before or after the loading or even the placing of articles of freight on a motor carrier truck itself, may form "so trivial, casual or occasional a part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of `loading' which is described by the Commission and which, in its opinion, affects safety of operation." This is the de minimis rule. Under the circumstances, Mangrum's service in line-up work being so trivial, casual, occasional and insubstantial, we hold that his employment both in 1963 and 1964 is subject to the overtime provisions of the Fair Labor Standards Act and not exempt. The exemption should be considered with due regard to the rule that such exemptions from the operation of humanitarian legislation, such as the Fair Labor Standards Act, are to be narrowly construed. A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945).
 
 
 7
 We had occasion to apply the holding in Pyramid Motor Freight, with full recognition of Morris, in our decision in Wirtz v. C & P Shoe Corporation, 5 Cir., 1964, 336 F.2d 21. In the latter case the employer's warehousemen occasionally participated in driving or helping on the employer's trucks. But this Court held that such activities were a negligible part of the warehousemen's duties, were not of a safety-affecting character and concluded that they were not exempt since they constituted a trivial, casual and occasional part of the employees' employment. The Court further held that "The primary jobs of these employees who sporadically helped on the trucks or acted as drivers did not include such work, and these infrequent activities on their part come within the de minimis rule set down by the Supreme Court in Pyramid Motor Freight Corporation v. Ispass, supra." See also Opelika Royal Crown Bottling Company v. Goldberg, 5 Cir., 1962, 299 F.2d 37. Our holding is the same here, for we do not believe the circumstances justify application of the exemption as to either the years 1963 or 1964.
 
 
 8
 Affirmed in part; reversed in part.