PASQUALE MINGIONE ET AL. *v.* NEW ENGLAND TALLOW, INC., ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued June 6—decided August 1, 1950

*James F. Rosen,* with whom, on the brief, was *John A. Maresca,* for the appellants (plaintiffs).

*Jeremiah D. Shea,* for the appellees (defendants).

BALDWIN, J.   The plaintiffs, employees of the defendant Van Iderstine Company, brought suit against that company and New England Tallow, Inc., to recover compensation for overtime claimed to be due them, under the provisions of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U. S. C. §§ 201-219, for various periods of time between the effective date of the act and the date of the complaint.   The defendants denied liability and alleged in a special defense that by § 13(b) (1) of the act (29 U. S. C. § 213[b][1]) the plaintiffs were exempt from its terms because they were employees whose activities affected the safety of operation of motor vehicles engaged in transportation in

interstate commerce and were, therefore, subject to the jurisdiction of the interstate commerce commission, which had the power under the Motor Carrier Act of 1935 to establish their qualifications and maximum hours of employment. 49 Stat. 546, § 204 (a) (3), 49 U. S. C. § 304 (a) (3). The trial court decided that the plaintiffs were exempt as alleged and rendered judgment for the defendants, from which the plaintiffs appealed.

It is undisputed that the defendant Van Iderstine Company conducted a rendering plant at Long Island City, New York. The defendant New England Tallow, Inc., was a nonoperating Connecticut corporation owned entirely by the Van Iderstine Company and maintained for the sole purpose of preventing the use of the trade name "New England Tallow." The Van Iderstine Company had a station in New Haven from which it operated trucks on established routes within the state of Connecticut to collect the bones, fats and hides used in its business. The plaintiffs worked on these trucks as drivers and helpers, gathered the materials and transported them to the station in New Haven. There they were sorted, weighed and loaded upon a truck belonging to the Van Iderstine Company which transported them to the plant in Long Island City. It was conceded that so far as the plaintiffs were concerned the Van Iderstine Company was a private carrier engaged in interstate commerce and that the plaintiffs were likewise engaged in an occupation necessary or incidental to the ultimate production of goods for interstate commerce. The case turns upon the question whether the nature of the duties performed by the plaintiffs brought them within the terms of the exemption provided in the Fair Labor Standards Act.

The plaintiffs seek sweeping changes in the findings and conclusions of the trial court concerning those of

their activities which bear on that issue. We have examined the evidence, which was made a part of the record, and conclude that the plaintiffs are entitled to no corrections of the finding.

The court found that the plaintiffs drove around the routes of the Van Iderstine Company calling upon butchers, picking up hides, bones and fats and returning with their loads to the station in New Haven. As incidental to this work, they spent several hours each week unloading the materials from the local trucks and loading them into a large transfer truck which came from the rendering plant in Long Island City three times a week. This transfer truck was constructed with grooves so that compartments of various sizes could be made; by means of them, the different types of material collected by the plaintiffs were kept separate. The size of the compartments and their location upon the truck depended upon the type, amount and weight of the material. It was the duty of the plaintiffs to build and arrange these compartments to accommodate each type of material collected and to load the material into the compartments. The plaintiffs were instructed only in a general way to get proper distribution of the load in the transfer truck and to build the compartments accordingly. The main concern in loading was to have the load distributed evenly, so that it would be balanced.

Section 13 (b) (1) of the Fair Labor Standards Act states that "The provisions of section 7 [providing for compensation for overtime] shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935."

In *Levinson* v. *Spector Motor Co.*, 330 U. S. 649, 67

S. Ct. 931, 91 L. Ed. 1158, the court had before it the question whether the interstate commerce commission had the power under the Motor Carrier Act of 1935 to establish qualifications and maximum hours of service with respect to an employee (in that case a "checker" or "terminal foreman," also described as a "partial-duty loader") a substantial part of whose activities consisted of doing, or immediately directing, the work of one or more "loaders" of freight for an interstate motor carrier. The court, after discussing the finding of the interstate commerce commission in *Ex Parte No. MC-2*, 28 M. C. C. 125, 133, as to what constitutes a "loader," decided that the activity of a "loader" affects the safety of operation of trucks used in interstate commerce; that the character of the work done rather than the time consumed in that work or the name given to the job is determinative; that one may be a "loader" within the definition even though he devotes a substantial part of his time to other work; and that even a "full-duty loader" may engage in other activities that may consume an even greater part of his time than his activities which affect safety. "The fundamental test," says the court (p. 671), "is simply that the employee's activities affect safety of operation. This is the test prescribed by this Court in *United States* v. *Amer. Trucking Assns.* [310 U. S. 534, 60 S. Ct. 1059, 84 L. Ed. 1345]." It is this test which demonstrates the need for the exercise of the commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment. The court held that those who fall within this definition come exclusively within the jurisdiction of the interstate commerce commission. Nor is the situation otherwise even though the commission may not have exercised its powers. The fact that the powers exist is enough. *Pyramid Motor Freight Cor-*

*poration* v. *Ispass*, 330 U. S. 695, 706, 67 S. Ct. 954, 91 L. Ed. 1184; *Morris* v. *McComb*, 332 U. S. 422, 434, 68 S. Ct. 131, 92 L. Ed. 44; *Fletcher* v. *Grinnell Bros.*, 78 F. Sup. 339, 340; *McDuffie* v. *Hayes Freight Lines, Inc.*, 71 F. Sup. 755, 757.

The plaintiffs argue that they did not assume any responsibility, that no skill or judgment was required in loading the trucks, and, in effect, that they were not even aware that their work affected safety of operation. This argument does not support their claim. It demonstrates, instead, the need for and purpose of the exercise of the power of the interstate commerce commission to fix qualifications and standards in the interests of safety, as provided by law. The exercise of this power is, the cited cases hold, the exclusive function of the commission. The conclusion of the trial court that the activities of each of the plaintiffs affected the safety of operation of the transfer trucks used by the Van Iderstine Company and that these activities came within a type of work, defined as that of a "loader," directly affecting the safety of motor vehicles engaged in interstate transportation on the public highways, so that the plaintiffs are within the exemption of § 13 (b) (1) of the Fair Labor Standards Act, was a legal and proper conclusion.

There is no error.

In this opinion the other judges concurred.