**McCOMB v. ROBERTSON.**
Civ. No. 907.

United States District Court
M. D. Tennessee, Nashville Division.
Jan. 12, 1952.

Beverley R. Worrell, Regional Attorney, U. S. Department of Labor, Birmingham, Ala., David V. Manker and Marvin M. Tincher, Attys., Wage and Hour Division, U. S. Department of Labor, Nashville, Tenn., for plaintiff.

E. D. Jackson, of Nashville, Tenn., for defendant.

1020

DAVIES, District Judge.

### Findings and Conclusions

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

### Findings of Fact

1. Defendant Hugh W. Robertson resides in Nashville, Davidson County, Tennessee, where he is and for several years past has been sole owner and operator of a place of business operated under the name Robertson Tire Company and located at 1620 West End Avenue. At that place of business defendant is and at all times herein mentioned was engaged in the business of selling and distributing automobile and truck tires, tubes, accessories, gasoline and oil, and in recapping and vulcanizing automobile and truck tires.

2. By agreement of the parties prior to trial of the case, and for the purpose of shortening the time required for trial, evidence with respect to coverage and exemption issues was limited to the period July 1 through December 31, 1947, that being the last full half-year period preceding the filing of this action.

3. At all times covered by the complaint defendant employed approximately seventeen employees in and about his said place of business in Nashville.

4. Two of defendant's employees, Lowery and Hutcherson, were employed during the period under consideration, in defendant's recapping plant where they regularly engaged in recapping and vulcanizing automobile and truck tires. During every workweek these employees recapped and vulcanized tires, some of which were thereafter used for hauling cargoes of merchandise in transit between points in Tennessee and points outside Tennessee, and some of which were placed on vehicles used in the production of goods for shipment to points outside the State of Tennessee.

5. Some of the customers for whom defendant's recappers, Lowery and Hutcherson, performed recapping and vulcanizing of tires during the period, and the amounts paid for such work were as follows:

|  | Recap | Vulcanizing | Total |
|---|---|---|---|
| Waverly Transfer Company | $ 55.79 | $ 13.07 | $ 68.86 |
| Centerville Transfer Company | 195.02 | 25.31 | 220.33 |
| Mt. Pleasant Transfer Company | 74.64 | 20.10 | 94.74 |
| Washington Manufacturing Company | 102.02 | 11.13 | 113.15 |
| W. G. Bush & Company | 114.08 | 155.30 | 269.38 |
| T. L. Herbert & Sons Company | 446.66 | 587.46 | 1034.12 |
| Southeastern Motor Truck Lines | 165.48 |  | 165.48 |
| Tennessee Biscuit Company |  | 9.75 | 9.75 |
| Hoover Motor Express Inc. | 670.72 | 83.43 | 754.15 |
| Nashville Gas & Heating Company | 65.58 | 2.50 | 68.08 |
| Cline & Bernheim | 35.20 | 95.00 | 130.20 |
| Cline & Doochin |  | 41.53 | 41.53 |
| C. B. Ragland & Company | 1473.88 | 149.08 | 1622.96 |
| Kentucky Recappers | 11.00 |  | 11.00 |
| Total | $3410.07 | $1193.66 | $4603.73 |

6. The uses to which the tires so recapped and vulcanized by defendant's recappers were put were as follows:

(a) Waverly Transfer Company was engaged in general hauling of freight between Nashville, Tennessee, and Waverly, Tennessee. 24.2 percent of its revenue during the period under consideration was derived from the hauling of goods in interstate commerce by interchange with other carriers. Tires recapped and vulcanized by defendant's recappers were used interchangeably by Waverly Transfer Company on motor equipment used in all its hauling.

(b) Mt. Pleasant Transfer Company was engaged in general hauling of freight between various points within the State of Tennessee. During the period under consideration approximately 3 to 4 percent of its total revenue was derived from the hauling of goods in interstate commerce through interchange with other carriers. In addition, this company hauled during the same period a substantial amount of materials each week between plants of Victor Chemical Company, which materials were used by the latter company in its production of goods for shipment outside the State of Tennessee. Tires recapped and vulcanized by defendant's recappers were used interchangeably on motor equipment operated by Mt. Pleasant Transfer Company in all its hauling.

(c) Centerville Transfer Company during the same period derived approximately 10 percent of its total revenue from the hauling of goods in interstate commerce through interchange with other carriers. In addition, this company hauled materials during the same period for Tennessee Products Company, which materials were used in the manufacture of goods which were shipped outside the State of Tennessee. Tires recapped and vulcanized by defendant's recappers were used interchangeably on motor equipment operated by Centerville Transfer Company in all types of its hauling.

(d) Washington Manufacturing Company is engaged at its plants in Tennessee and Kentucky in the manufacture of work clothes. 75 to 80 percent of its total production is shipped from Tennessee to other states. Tires recapped and vulcanized by defendant's recappers during the period under consideration were all used on motor equipment operated by Washington Manufacturing Company in interplant hauling. A substantial amount of such hauling was between the company's Nashville warehouse and its plants in Kentucky.

(e) W. G. Bush and Company was engaged during the period under consideration in production of bricks, approximately 14.7 percent of which were shipped to points outside the State of Tennessee. Tires recapped and vulcanized by defendant's recappers were used interchangeably on all the company's trucks both for local deliveries and for hauling bricks about the yards and to railroad cars for loading prior to their being shipped out of state.

(f) T. L. Herbert & Sons Company during the same period was engaged in the business of selling construction materials. It furnished such materials to the City of Nashville and to Davidson County for paving and repairing streets and roads, to contractors for the same uses and to Southern Bell Telephone Company for use in extending and enlarging the latter's building. T. L. Herbert & Sons also supplied a small amount of materials directly to dealers and construction firms in states other than Tennessee. Tires which were recapped and vulcanized by defendant's recappers were used on motor equipment engaged in all such types of hauling and delivering.

(g) Southeastern Motor Truck Lines, Inc., is an interstate carrier and during the period under consideration 85 percent of its business involved the hauling of goods in interstate commerce. Tires recapped and vulcanized by defendant's recappers were used on Southeastern's vehicles wherever needed in such hauling.

(h) Tennessee Biscuit Company sold approximately 40 percent of its total production outside the State of Tennessee during the period under consideration. Three of its 14 tractor-trailer combinations operating out of Nashville operated over routes which took them into Kentucky, Alabama and Mississippi each week. Tires recapped and vulcanized by defendant's recappers were used interchangeably by Tennessee Biscuit Company on all of its 14 vehicles including those which regularly hauled goods to points outside the State of Tennessee.

(i) Hoover Motor Express, Inc., is an interstate carrier, and approximately 66 percent of its business during the period under consideration involved the hauling of goods in interstate commerce. All the tires recapped and vulcanized for this company by defendant's recappers were used on vehicles which hauled interstate cargo.

(j) Nashville Gas and Heating Company is a public utility engaged in the distribution of natural gas to customers in Nashville and vicinity. The gas which it

1022

sells and distributes moves in a continuous flow from gas wells in Texas through the gas company's pipe lines to its many customers. Tires recapped and vulcanized by defendant's recappers were used on cars and service trucks operated by the gas company in connection with its repairing, extending and servicing of pipe lines, through which the gas is distributed, and in installing, servicing and repairing the appliances which consume such gas.

(k) Cline & Bernheim and Cline & Doochin are affiliated firms engaged in the production and sale of scrap metal. Approximately 90 percent of their total production is shipped to points outside Tennessee. Tires recapped and vulcanized by defendant's recappers were used on motor equipment engaged in picking up scrap and salvage materials, in concentrating them on the yards and in other work involved in the business of producing and selling such scrap metal.

(l) C. B. Ragland and Company is a wholesale grocery company which sells substantial quantities of merchandise outside Tennessee. The company operates a fleet of tractor-trailer combinations, three of which travel into the State of Kentucky each day. Many of the vehicles included in the fleet are used interchangeably for the routes. It also uses various of its vehicles for picking up incoming merchandise at railroads. Tires recapped and vulcanized by defendant's recappers were used interchangeably on all Ragland and Company's vehicles, many of which were engaged in the foregoing types of hauling.

(m) Tires which were recapped or cured for Kentucky Recappers were shipped by defendant to Bowling Green, Kentucky.

7. Defendant's recappers regularly, up until the wage-hour inspection in September, 1947, assisted in unloading, carrying in and storing new tires, tubes, camelback, and other repair materials received several times each week at defendant's place of business directly from out-of-state sources. Even after the filing of this action these employees continued to carry in and store camelback and other repair materials received directly from out of state. At least eighteen shipments of such materials were received at defendant's place of business directly from out-of-state sources during the half-year period under consideration.

8. Two of defendant's office employees, Miss Margaret Carnahan and Mrs. Mary Wolf, regularly checked and posted all sales tickets, including those relating to the recapping and vulcanizing of tires used as described in Finding No. 6 above.

9. Defendant's office supervisor, Mrs. Arinthia May, was employed in 1947 on a salary basis of $200 per month with two weeks vacation and a bonus at the end of the year, which was $200 in 1947. She has full supervision of the office and exercises full discretion in discharging and employing office help, assigning duties to each employee, represents the company at meetings of the Retail Credit Bureau, and has full charge of the company's credits. In addition, she employs a collection agency and attorney of her own choosing to handle delinquent accounts. She pays all company bills, including those to the United States Rubber Company, and keeps a general ledger. She performs none of the general office duties and has very little, if any, to do with the general office bookkeeping.

10. Defendant's employee, Sam Jones, engaged in a substantial amount of work such as dismounting, matching up and remounting tires on trucks of C. B. Ragland and Company, many of which trucks were used for interstate hauling, and helping to unload shipments of new tires and tubes received at defendant's place of business directly from points outside Tennessee. At the time of the trial of this case such duties were being performed by another employee, Hall Lyons.

11. Throughout the period covered by the complaint, employees Carnahan, May, and Wolf regularly worked 41 hours per week, Lowery and Hutcherson worked alternate weeks of 49 and 53 hours, and Jones regularly worked 54 hours a week.

12. All defendant's employees named in Finding No. 11 above were paid straight salaries or weekly wages and none of them received any additional compensation for hours worked in excess of 40 per week.

13. The defendant has not kept any records showing the hours worked each work-

day, the total hours worked each workweek, the regular hourly rates of pay or the total weekly overtime excess compensation with respect to the employees named in Finding No. 11 above.

14. Defendant's sales of merchandise for purposes of resale and for commercial and industrial uses amounted to more than 25 percent of his total sales.

## Conclusions of Law

1. The court has jurisdiction of the parties hereto and of the subject matter of this action.

2. Defendant's customers, Waverly Transfer Company, Mt. Pleasant Transfer Company, Centerville Transfer Company, Washington Manufacturing Company, W. G. Bush & Company, T. L. Herbert & Sons Company, Southeastern Motor Truck Lines, Inc., Hoover Motor Express, Inc., Tennessee Biscuit Company, Nashville Gas & Heating Company, Cline & Bernheim, Cline & Doochin, and C. B. Ragland Company, were all engaged, in varying degrees, in interstate commerce or in the production of goods for interstate commerce.

3. The tires recapped and vulcanized by defendant's employees for the foregoing customers were thereafter used on motor equipment operated by such customers in hauling goods in interstate commerce or in the production of goods for interstate commerce.

4. Defendant's employees, Lowery and Hutcherson, in recapping and vulcanizing tires for these customers were thereby engaging in interstate commerce and the production of goods for interstate commerce.

5. Defendant's employee, Sam Jones, in dismounting, matching up and remounting tires on trucks of C. B. Ragland & Company, was engaging in interstate commerce.

6. Defendant's employees, Lowery, Hutcherson and Sam Jones, were engaging in additional activities in interstate commerce by unloading, carrying in and storing new tires, tubes, camelback and other repair materials received at defendant's place of business directly from out-of-state sources.

7. Defendant's office employees, in maintaining ledgers with respect to transactions in interstate commerce carried on by defendant and his employees, in preparing and submitting social security reports, in maintaining a record of tires and tubes accepted by defendant for adjustment and thereafter delivered for out-of-state shipment, in receiving and opening mail received from out of state and in preparing correspondence and remittances for out-of-state mailing were thereby engaging in interstate commerce and the production of goods for commerce.

8. Defendant's business does not qualify for exemption under Section 13(a) (2) of the Act, 29 U.S.C.A. § 213(a) (2), as a retail or service establishment.

9. Defendant's office supervisor, Mrs. Arinthia May, is exempt as an administrative or executive employee under Section 13(a) (1) from the overtime provisions of the Act.

10. Defendant, an employer within the meaning of the Fair Labor Standards Act, has violated Sections 7 and 15(a) (2) of the Act, 29 U.S.C.A. §§ 207, 215(a) (2), by failing to compensate certain of his employees, employed in interstate commerce and the production of goods for interstate commerce, at not less than one and one-half times their regular rates of pay for hours worked in excess of 40 during the workweek.

11. Defendant has violated Sections 11 (c), 29 U.S.C.A. § 211(c), and 15(a) (5) of the Act by failing to make, keep and preserve records required under the Act and Regulations, Part 516.

12. Plaintiff is entitled to the injunctive relief sought in this action with respect to the provisions of Sections 15(a) (2) and 15(a) (5) of the Act.

Judgment will be entered accordingly.