J. H. ROSE TRUCK LINE, INC., Appellant,

v.

Billy R. ROSS, Appellee.

No. 234.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

April 30, 1969.

Rehearing Denied May 28, 1969.

Alfred W. Mullennix, William A. Brown, Powell, Brown & Maverick, Houston, for appellant.

James H. Kepner, Rafferty, Taylor, Kepner & Associates, Houston, for appellee.

BARRON, Justice.

The plaintiff, Billy R. Ross, brought this action under the Fair Labor Standards Act (29 U.S.C.A. Sec. 201–219) to recover overtime compensation for work he performed while employed by the defendant, J. H. Rose Truck Line, Inc., from November 12, 1964 until June 17, 1965. Defendant is a common carrier of goods by motor vehicle over the highways, operating 322 truck-tractors and 444 semi-trailers over the highways in 49 states under certificates of public convenience and necessity from the Interstate Commerce Commission (now Department of Transportation) and other regulatory bodies.

Plaintiff was paid a regular hourly rate of pay of $1.75 per hour, above the minimum wage required by Section 206 of the Fair Labor Standards Act, but he was not paid 1½ times this rate for hours worked in excess of 40 hours per week. Plaintiff further requests that these alleged unpaid wages be doubled by way of penalty. See 29 U.S.C.A. Sec. 216(b). He further seeks attorney's fees.

Defendant contends that the plaintiff was not covered by the Fair Labor Standards Act, but that he was subject to and governed by the Motor Carrier Act, 49 U. S.C.A. Sec. 304. The applicable exemption from the overtime requirement of Section 207 of the Fair Labor Standards Act, appears in Section 13(b) (1) of the Fair Labor Standards Act (29 U.S.C.A. Sec. 213(b) (1)), which provides:

"(b) The provisions of section 207 of this title shall not apply with respect to —

(1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; or * * *."

It is provided in 49 U.S.C.A. Sec. 304 (Motor Carrier Act) as follows:

"(a) It shall be the duty of the Commission—

(1) to regulate common carriers by motor vehicle as provided in this

chapter, and to that end the Commission may establish reasonable requirements with respect to * * * qualifications and maximum hours of service of employees, *and safety of operation and equipment."* (Emphasis added)

■ There has been much litigation construing the relative positions of the two Acts under consideration. It is clear that Congress meant to have the Fair Labor Standards Act construed liberally and to include all employees not expressly excepted. A. H. Phillips v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095.

In construing the Motor Carrier Act the U. S. Supreme Court has held that the said Act empowers the Interstate Commerce Commission to regulate qualifications and hours of service of only such interstate motor carrier employees *whose work affects safety of operation*. United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158.

■ To be excepted under the Fair Labor Standards Act it is not necessary that the Interstate Commerce Commission exercise its authority. It is merely a question of whether or not the power exists in the Commission. Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44.

In Levinson v. Spector Motor Service, supra, the U. S. Supreme Court held that the true test is whether the employee performs duties which substantially affect safety of operation, rather than whether the duties affecting safety are substantial. See also Quinn v. Earl Bray, Inc., 108 F. Supp. 355, 358, (D.C.Okla., 1952). The emphasis is placed on the *effect of the duties on safety of operation* rather than on the proportion of time spent in doing those duties. In Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 67 S.Ct. 954, 91 L. Ed. 1184, the U. S. Supreme Court held that if some, but less than a substantial

part, of such activities come within the kind of activities which affect such safety of operation, then the right of those workmen who were engaged in such activities to receive the benefits of Section 207 of the Fair Labor Standards Act does not come within the precise issue determined in the Levinson case, and the Supreme Court reserved its decision as to the right of such workmen to receive the benefits of the Fair Labor Standards Act. Later, in Morris v. McComb, supra, the U. S. Supreme Court again held that it is the character of the employee's activities rather than the proportion of time or activities that determines the actual need for the Interstate Commerce Commission's power. Where the duties substantially affected safety of operation only for a small percentage of the total work time, the Interstate Commerce Commission was deemed to have power to control, and the overtime provisions of the Fair Labor Standards Act did not apply.

■ Exemption from provisions of the Fair Labor Standards Act is applicable to those employees and those only whose work involves engagement in activities consisting *wholly or in part* of a class of work which is defined by the Interstate Commerce Commission (1) as that of driver, driver's helper, loader, or *mechanic*, and (2) as *directly* affecting the *safety of operation* of motor vehicles on public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act. However, it is clear that whether an employee falls within such an exempt category, neither the name given to his position nor that given to the work that he does is controlling. What is controlling is the character of the activities involved in the performance of his job. See 29. Code of Federal Regulations, pp. 498, 499 (parts 500 to 899, 1968); Pyramid Motor Freight Corp. v. Ispass, supra; Quinn v. Earl Bray, Inc., supra, 108 F. Supp. p. 357.

The record in this case supports the following facts: Mr. Ross was hired as a me-

chanic by Mr. Flynt, the superintendent of the maintenance shops of defendant, who was succeeded by Mr. Damek in the same duties. Ross stated that he was a welder and an iron worker, and that most of his work was confined to the welding shop. Plaintiff was given a physical examination of a type usually required to meet safety standards. His employment application stated that he worked from 1961 to 1964 as a "Mech. & Welder," and other documents showed him to be a mechanic or a mechanic-welder. Ross denied, however, that he was a mechanic. He was assigned to work in one of the maintenance shops identified as the welding shop or trailer shop, primarily as a welder. His supervisor verified his qualifications as a welder and determined that it was safe to entrust Mr. Ross with the work of welding on trucks and trailers hauling loads on the highways. His leaderman was Mr. Skiles, a senior mechanic and welder. Ross performed work on both trucks and trailers. The majority of plaintiff's working activities consisted of lengthening trailers and making beams by burning and welding. He did occasional work for his employer, building a horse walker, working on a building, building parts, and building a jig with which to make "headache racks" (safety devices to prevent heavy loads from shifting and crushing the driver). The maintenance shops consist of one building containing the motor maintenance shop, the parts room, and the trailer maintenance shop where Mr. Ross worked. All maintenance operations and facilities are under Mr. Damek's supervision. At a separate location there is a paint shop and a body shop under different supervisors. Included in the maintenance facilities at the main terminal under Mr. Damek is what is called a "safety lane," required by Interstate Commerce Commission regulations, where every truck must undergo a safety inspection before it is dispatched, to assure a final pre-run inspection for safety. The safety lane is manned 24 hours a day, seven days a week, by one or more mechanics who conduct the inspection. There are five or six mechanics under Mr. Damek's supervision. Mr. Ross is one of the persons assigned to this duty, especially on Sundays. Ross, however, denied that his duties were more than occasional on the safety lane, and extended for only short periods of time. Work on the safety lane involves inspection of the vehicles before they go onto the highways to insure that they are safe for the operation.

In answer to interrogatories, plaintiff admitted occasional building of headache racks, replacing bumpers on trucks, repairing damaged or broken bumpers on trucks, repairing truck frames and adding cross members to brace up under the fifth wheels. Fifth wheels are the load-bearing coupling device between trucks and trailers. It is usually necessary that a cross member be put underneath to hold the fifth wheel to prevent the fifth wheel from pulling off or breaking the frame of the truck. He welded spring brackets to the axles of trucks, welded brackets for clearance lights, cut trailer frames in two and reinforced and lengthened them, and on a few occasions he helped the motor mechanics in the motor shop. Damek, the supervisor, testified that Ross was a trailer mechanic, and any repair work requiring welding was done by Mr. Ross. He performed work welding air tanks back onto the truck or trailer, repaired broken frames, and lengthened trailers from 35 to 40 feet, checked trucks on the safety lane for lights, air leaks, etc., repaired and reworked the clearance lighting system, repaired broken spring hangers, repaired and mounted headache racks, and mounted air horns on trailers. Mr. Brodie, the General Manager for defendant, observed Mr. Ross repairing cracked fifth wheels, repairing air leaks in the system which operates the brakes, repairing cracked frames of trucks and trailers, installing or repairing headache racks and various similar work.

Ross is not a motor mechanic, but he is a welder and general maintenance man. He did not work in any part of the compa-

ny operation other than the maintenance shop, and he never worked in the tire shop, body shop, paint shop, carpenter shop or other shops which are at different locations.

The trial court submitted to the jury two special issues, the first inquiring whether while Ross was employed by J. H. Rose Truck Line, Inc., the activities required of him by his employer were those of a "mechanic." The jury answered the special issue, "We do not." The second special issue inquired whether Ross was employed by defendant in activities which substantially affected the safety of operation of the equipment used by his employer in its interstate motor carrier business. The jury answered the second special issue, "We do."

No motion to disregard any special issue or for judgment non obstante veredicto was filed by either party under Rule 301, Texas Rules of Civil Procedure. The trial court apparently assumed that the controlling special issue was number 1 above, and entered judgment for plaintiff, Ross, on the verdict of the jury. We believe the trial court was in error in so doing.

 It is the duty of the courts to reconcile apparent conflicts in jury findings if that can reasonably be done. Texas & Pacific Ry. Co. v. Snider, 159 Tex. 380, 321 S.W.2d 280, 282. Federal regulations and decisions have consistently held that neither the name given to a position nor that given to the work which is done is controlling, but that the character of the activities of a workman is controlling. As a general rule a driver, driver's helper, loader or mechanic whose work directly affects safety of operation is exempt from the overtime provisions of the Act. But those are evidentiary or general terms, and the work actually done is the controlling criterion. Federal decisions have held clearly that "mechanics" perform work of the exempt character where they actually do inspection, adjustment, repair or maintenance work on the motor vehicles themselves, including trucks, tractors and trail-

ers, and busses. 29 C.F.R., supra, p. 505, and cases cited. We therefore believe that special issue number 1 above is wholly immaterial and irrelevant to a decision in this case, and that the special issue may be ignored. The two special issues do not conflict and are reconcilable, the first issue being immaterial and of no legal significance under Federal law. We hold that judgment may properly be entered on the verdict without compliance with the procedure of Rule 301, involving motions to disregard special issues. McDonald, Texas Civil Practice, Vol. 4, Sec. 17.31; Whittenburg v. Miller, 139 Tex. 586, 164 S.W.2d 497, 504; Bewley Mills v. First Nat. Bank, 110 S.W.2d 201, 206, (Tex.Civ.App.), writ dismd.; Texas Employers' Ins. Ass'n. v. McDowell, 278 S.W.2d 444, 446, (Tex.Civ. App.), writ ref., n. r. e. And see C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 194, 195, (Tex.Sup.); Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S. W.2d 1026, 1030, (Tex.Com.App.), op. adopted. Former Art. 2211, V.A.T.S., in effect at the time of some of the decisions involved and cited above (now Rule 301) required a similar procedure when a true conflict existed, and we believe the cases cited reflect the present law of this state.

 While the trial court rendered judgment in favor of plaintiff, Ross, on the verdict of the jury, on appellate review all reasonable presumptions will be indulged to support the verdict or findings of the jury. Najera v. Great A. & P. Tea Co., 146 Tex. 367, 207 S.W.2d 365; 4 Tex.Jur.2d, Sec. 804, p. 324, and cases cited. We believe the findings of the jury in connection with special issue number 2 is fully supported by the evidence and is the ultimate and controlling issue. The activities of this employee operated directly upon equipment and were of such character as directly to affect safety of operation to a substantial extent. Plaintiff is accordingly exempt from coverage of the Fair Labor Standards Act. McDuffie v. Hayes Freight Lines, 71 F.Supp. 755 (D. C., Illinois, 1947); Quinn v. Earl Bray,

Inc., supra; Tobin v. Mason & Dixon Lines, 102 F.Supp. 466, 470, 471 (D.C., Tenn., 1951). And see Morris v. McComb, supra. We believe the facts of this case clearly distinguish it from such decisions as Walling v. Silver Fleet Motor Express, 67 F.Supp. 846 (D.C., Ky., 1946); Anuchick v. Transamerican Freight Lines, 46 F.Supp. 861 (D.C., Michigan, 1942), and Keeling v. Huber & Huber Motor Express, 57 F.Supp. 617 (D.C., Ky., 1944), where construction and manufacturing were involved. Plaintiff here had many duties which directly affected safety of operation. Cf. 29 C.F.R., Sec. 782.6(c) (1), p. 506.

Nor do we believe the de minimis rule applies here. In Pyramid Motor Freight Corp. v. Ispass, supra, the U. S. Supreme Court held that the activities of an employee of an interstate carrier may form "so trivial, casual or occasional a part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of 'loading' which is described by the Commission and which, in its opinion, affects safety of operation." In the case of Wirtz v. Tyler Pipe and Foundry Co., 369 F.2d 927 (5th Cir., 1966) the employee was held non-exempt from overtime provisions by reason of the de minimis rule. In that case, however, the driving of the vehicle involved was only from the parking lot to the loading dock, and such employee's actions and inspections were preceded and followed by the work of other mechanics and employees as to both service and inspection. The employee's regular duties as a mechanic for Tyler Pipe were carried on in service and repair only of industrial machinery, such as fork lifts and front-end loaders.

Defendant, J. H. Rose Truck Line, Inc., was entitled to judgment on the verdict of the jury, and the evidence is ample to support it. We accordingly reverse the judgment of the trial court and render judgment in favor of defendant.

Reversed and rendered.